UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.   )<br>)<br>JOSE DURAN   )<br>Defendant   ) | Mag.<br>~~Criminal~~ No. 03m0467 RBC |

## AFFIDAVIT IN SUPPORT OF RULE 40 PROCEEDING

I, Barry Kelly, Task Force Agent, Drug Enforcement Administration, do hereby make oath before the Honorable Robert B. Collings, United States Magistrate Judge for the District of Massachusetts, that upon knowledge coming to me in connection with my official duties and as part of the official records of my office, I am advised that there is presently outstanding a warrant of arrest for one Jose Duran on a complaint filed in the District of Maine charging the defendant with conspiracy to distribute, and to possess with intent to distribute, heroin, and I do hereby make oath that this warrant of arrest is outstanding in said District on the basis of the information set out above. A copy of said warrant is attached.

Barry Kelly
Task Force Agent
Drug Enforcement Administration

Subscribed and sworn to before me this ___ day of NOV 19 2003.

Robert B. Collings
United States Magistrate Judge

## UNITED STATES DISTRICT COURT

### DISTRICT OF MAINE

UNITED STATES OF AMERICA    )
                            )
v.                          )   Mag. No. 03- 82 C
                            )
JOSE DURAN                  )

### CRIMINAL COMPLAINT

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

Beginning in about 2000 and continuing until in about November 2003, in the Districts of Maine and Massachusetts, the defendant,

### JOSE DURAN

knowingly and intentionally conspired with Alfredo Mejias, a/k/a Freddie Mejias and others to commit offenses against the United States, that is, to distribute and possess with intent to distribute a substance containing heroin, a Schedule I controlled substance, as listed in Title 21, United States Code, Section 812, in violation of Title 21, United States Code, Sections 846 and 841(a)(1). It is further alleged that the penalty provisions of Title 21, United States Code, Section 841(b)(1)(C) apply to the conduct described herein.

I further state that I am a Task Force Agent with the United States Drug Enforcement Administration and that this Complaint is based on those facts which are set forth in my affidavit which is attached hereto and which is incorporated herein by reference.

Date:

_____
TFA Steven Thibodeau
U.S. Drug Enforcement Administration

Sworn to before me and subscribed in my presence this 19th day of November, 2003.

A TRUE COPY
ATTEST: William S. Brownell, Clerk

By_____
        Deputy Clerk

_____
United States Magistrate Judge

## AFFIDAVIT OF STEVEN THIBODEAU

I, Steven Thibodeau, do hereby depose and state:

I am employed as a Scarborough, Maine police officer. I have been employed in this capacity for seven years. I am currently assigned to the Northeast High Intensity Drug Trafficking Area (HIDTA) Task Force of the United States Drug Enforcement Administration (DEA) in Portland, Maine. I am a federally deputized task force agent. I make this Affidavit in support of the issuance of a criminal complaint charging Jose Duran, with one count of conspiracy to distribute and possess with intent to distribute heroin in violation of 21 U.S.C. §§ 846, 841(a)(1). The information contained in this affidavit is known to me from personal knowledge, discussions with other investigating agents and cooperating individuals identified below. This affidavit does not contain all the facts known to me at this time, but merely seeks to establish that probable cause exists that Jose Duran has committed the above-mentioned offense. In support thereof, I state the following:

1. Attached hereto as Exhibit A is my Affidavit of November 14, 2003, which was filed in support of the issuance of a complaint charging Alfredo Mejias, a/k/a Freddie Mejias, with distribution of heroin. The facts set forth in that affidavit are incorporated herein by reference.

2. On November 14, 2003, United States Magistrate Judge Cohen signed a criminal complaint charging Mejias with distribution of heroin. Magistrate Judge Cohen issued a warrant for Mejias' arrest.

3. On November 17, 2003, at approximately 9:00 p.m. HIDTA task force agents, including myself, located Mejias at a motel room in Old Orchard Beach, Maine, and

arrested Mejias pursuant to that warrant. Mejias had approximately 240 bags of heroin on his person at the time of the arrest. The bags were marked with a logo of Batman. I advised Mejias of his Miranda rights and he admitted to me that he had a handgun in the motel room. Agents found a .38 caliber revolver in a backpack in the closet of the motel room.

4. Mejias was taken back to the Old Orchard Police Department where he was advised of his right to be brought before a United States Magistrate Judge without unnecessary delay for an initial appearance. Mejias agreed to waive his Miranda rights and indicated that he wanted to cooperate with us. Mejias also signed a written waiver of his right to be brought before a United States Magistrate Judge without unnecessary delay for an initial appearance. A copy of that waiver is attached hereto as Exhibit B.

5. DEA S/A Paul Wolf and I interviewed Mejias. He told us that he had purchased the bags of heroin that were seized from him that night from Jose Duran of Lawrence, Massachusetts. He said that he had been purchasing heroin from Duran for approximately three years, two to three times a week. Mejias said that he typically purchases from 500-700 bags of heroin from Duran each time he sees him. Mejias stated that he pays Duran $4.00 for each bag of heroin and sells them in the Portland area for $20.00 a bag. Mejias also said that he was addicted to heroin and was using approximately 80 bags of heroin a day. Mejias said that he usually calls Duran around noon on the day he wants to buy heroin and makes arrangements to meet that night. Mejias indicated that the last ten times he has met Duran to purchase heroin, he has met him in a parking lot on Farnham Street in Lawrence, MA. Mejias described Duran's vehicle as a red Acura with shiny chrome rims with Massachusetts plates. Mejias

2

attempted to make a recorded call to Duran that night but Duran did not answer his telephone.

6. On November 18th, Mejias agreed to make another recorded call to Duran to arrange a meeting for the purpose of purchasing heroin. S/A Wolf and I monitored that call. During that call, Mejias indicated that he wanted 600 bags of heroin that night. Duran said that he wanted to do the deal after dark.

7. DEA and HIDTA task force agents traveled with Mejias to Lawrence Massachusetts. Mejias was experiencing symptoms of withdrawal during this time. Mejias made several other calls to Duran regarding the transaction once they were in Massachusetts. At approximately 7:30 p.m., DEA S/A Kate Barnard and Mejias drove Mejias' vehicle into the parking lot on Farnham Street in Lawrence where Duran had agreed to meet Mejias. Mejias pointed out Duran's vehicle which was in the lot but noone was in the vehicle. Approximately five minutes later, DEA S/A Dan Rousseau saw an individual matching the description of Duran, walking into the parking lot with a cell phone to his ear. Duran motioned to Mejias to get out of the car. Mejias told S/A Barnard that the individual motioning him was in fact Jose Duran. Agents moved in to arrest Duran. As the agents approached, Duran fled into an apartment on the first floor of 205 Farnham Street. Agents followed him into the apartment and apprehended Duran in the bathroom as he was flushing a large packet down the toilet.

8. The toilet was plugged up by the packet. TFA Michael Monecarvo with Cross Border Initiative Task Force, broke the toilet bowl and found a large clear bag with smaller plastic baggies containing what appeared to be heroin. The small baggies were marked with the same Batman logo as the bags seized from Mejias on November 17th. I

went down to the basement area of the building where the main drain goes out of the building and opened the drain cover and recovered two small bags of what appeared to be loose heroin.

9. S/A Dan Rousseau conducted a chemical field test of a sample of the substance seized from Mejias when he was arrested and it tested positive for heroin.

10. S/A Paul Wolf conducted a chemical field test of a sample of the substance seized from the toilet at 205 Farnham Street in Lawrence and it tested positive for heroin.

11. Based on the above information, I believe that probable cause exists to find that Jose Duran has committed the offense of conspiracy to distribute and possess with intent to distribute heroin in violation of 21 U.S.C. §§ 846, 841(a)(1).

Dated at Portland, Maine this 19th day of November, 2003.

_____
TFA Steven Thibodeau
DEA

Subscribed to and sworn before me this 19th day of November, 2003.

_____
United States Magistrate Judge

4

# EXHIBIT A

## AFFIDAVIT OF STEVEN THIBODEAU

I, Steven Thibodeau, do hereby depose and state:

I am employed as a Scarborough, Maine police officer. I have been employed in this capacity for seven years. I am currently assigned to the Maine High Intensity Drug Trafficking Area (HIDTA) Task Force of the United States Drug Enforcement Administration (DEA) in Portland, Maine. I make this Affidavit in support of the issuance of a criminal complaint charging Alfredo Mejias, a/k/a Freddie, with one count of distribution of heroin in violation of 21 U.S.C. § 841(a)(1). The information contained in this affidavit is known to me from personal knowledge, discussions with other investigating agents and cooperating individuals identified below. This affidavit does not contain all the facts known to me at this time, but merely seeks to establish that probable cause exists that Alfredo Mejias has committed the above-mentioned offense. In support thereof, I state the following:

1. At approximately 3:00 p.m., on July 24, 2003, a cooperating individual ("CI") made a telephone call to an individual he knew as "Freddie" for the purpose of buying heroin. The CI was cooperating with law enforcement because he had received my assistance in resolving an earlier traffic offense. I know that the CI has a prior non-drug felony conviction that is unrelated to his cooperation in this case. The CI has been paid by DEA for his assistance in this and other cases.

2. Freddie and the CI arranged to meet at the 7-Eleven convenience store, located at 27 Washington Avenue, Portland, Maine, to buy heroin. The CI told us that he had known Freddie for less than a year and that he had purchased heroin from him during that time period. The CI also told us that he had previously met Freddie at 115 Cumberland Avenue, Apt. #2 in Portland, Maine, and that Freddie drove a green Ford Taurus.

3. At approximately 3:45 p.m., S/A Daniel Rousseau and I met with the CI. S/A Rousseau and I searched the CI and his vehicle and did not find any money or contraband on either the CI or in the CI's vehicle. S/A Rousseau fitted the CI with a transmitting device so that the CI's conversations would be monitored and recorded and gave the CI $1,100.00 in DEA prerecorded money.

4. At approximately 4:12 p.m., the CI arrived at the 7-Eleven parking lot in his vehicle and placed a phone call to Freddie letting Freddie know that the CI was waiting for him at the 7-Eleven. Freddie told the CI to come to 115 Cumberland Avenue, Apt. #2, which was across the street from the 7-Eleven.

5. The CI got out of his vehicle and walked across the street to 115 Cumberland Avenue. He entered the building and went into Apartment #2 where he met with Freddie. In the apartment, Freddie gave the CI 100 bags of what appeared to be heroin. The CI gave Freddie the $1,1,00.00 of DEA money. The CI left the building, walked across the street and reentered his vehicle. He drove to a prearranged location and met with S/A Rousseau and me. The CI gave me a clear plastic baggie, containing 100 bags of what appeared to be heroin. I searched the CI and his vehicle and did not find any drugs or money on his person or in his vehicle.

6. At the time of the previously described transaction on July 24, 2003, I observed a green Ford Taurus parked in front of 115 Cumberland Avenue. I ran a check with the Maine Department of Motor Vehicles (DMV) and received the information from the DMV that the green Ford Taurus was registered to a Freddie Mejias of 15 Winding Way, Standish, Maine, date of birth 1/16/67. I also obtained a driving record from the DMV for Freddie Mejias, date of birth 1/16/67, which reflected his social security number. I then discovered that the Cumberland County Sheriff's Office had a record that an Alfredo Mejias, also known as Freddie Mejias, with the same date of

2

birth and social security number, had been previously arrested. I obtained the booking photographs of that individual from the Cumberland County Sheriff's Office and showed them to the CI. The CI identified the photographs of Alfredo Mejias as the individual he knew as Freddie and from whom he had purchased the 100 bags of what appeared to be heroin on July 24, 2003.

7. The recording device used to record the conversation between the CI and Mejias malfunctioned and there is no recording of that conversation. Agents were able to hear the conversations over the transmitter, however, during the transaction.

8. The substance the CI purchased from Mejias was sent to the DEA laboratory and analyzed. The laboratory report reflects that the substance contained heroin and weighed 2.6 grams.

9. Based on the above information, I believe that probable cause exists to find that Alfredo Mejias, a/k/a Freddie has committed the offense of distribution of heroin in violation of 21 U.S.C. § 841(a)(1).

Dated at Portland, Maine this 14th day of November, 2003.

_____
TFA Steven Thibodeau
DEA

Subscribed to and sworn before me this 14th day of November, 2003.

_____
United States Magistrate Judge

3

EXHIBIT B

# WAIVER OF RIGHT TO A PROBABLE CAUSE FINDING AND TO SPEEDY APPEARANCE BEFORE A FEDERAL MAGISTRATE JUDGE PURSUANT TO FED.R.CRIM.P. 5

1. I, ALFREDO MESTRE understand that I have been arrested and that I have the right to be brought before a federal magistrate judge without unnecessary delay for an initial appearance.

2. I understand that at my initial appearance before the magistrate-judge the following would occur:

   a. I would be informed of the charges against me.

   b. I would have a right to be represented by an attorney, and to have the court appoint an attorney to represent me if I was unable to obtain an attorney.

   c. I would be allowed reasonable time and opportunity to consult with my attorney.

   d. I would not be required to make any statements, and any statements I did make might be used against me.

   e. I would be informed of the general circumstances under which I could be released before trial, and the magistrate-judge would either set bail or order me detained.

   f. Unless I waived my right to a preliminary hearing, the magistrate-judge would set a date for a preliminary hearing to determine whether there was probable cause to believe that I committed an offense.

3. Knowing and understanding all of this, and knowing that I will be charged and prosecuted at a later date, I waive and give up my right to be brought before a magistrate without unreasonable delay.


Dated: 11-17-2003                               _____

Witnessed:
_____